UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY SMITH,<br><br>        Plaintiff,<br><br>   v.<br><br>SERGEANT J. GONZALES, et al.,<br><br>        Defendants. | 1:17-cv-00436-DAD-GSA-PC<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED IN PART AND DENIED IN PART**<br>**(ECF No. 36.)**<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS** |

I.        PROCEDURAL HISTORY

Larry Smith ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  This case now proceeds with Plaintiff's First Amended Complaint filed on June 23, 2017, against defendants Sergeant Gonzales, Correctional Officer (C/O) Johnson, C/O Castro, C/O Miner, C/O Florez, and C/O Potzernitz for use of excessive force in violation of the Eighth Amendment; against defendants C/O Fritz and C/O Scaife for failure to protect Plaintiff in violation of the Eighth Amendment; and against defendant Sergeant Gonzales for retaliation in violation of the First Amendment.[1]  (ECF No. 12.)

---

[1] The court issued an order dismissing all other claims and defendants from this case on October 5, 2018, for failure to state a claim.  (ECF No. 25.)

1

On April 30, 2019, Defendants filed a motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies. (ECF No. 36.) On July 1, 2019, Plaintiff filed an opposition to the motion. (ECF No. 39.) On July 19, 2019, Defendants filed a reply to Plaintiff's opposition. (ECF No. 44.) Defendants' motion for summary judgment has been submitted upon the record without oral argument pursuant to Local Rule 230(*l*), and for the reasons that follow, the court finds that Defendants' motion for summary judgment should be granted in part and denied in part.

## II.  PLAINTIFF'S ALLEGATIONS IN THE FIRST AMENDED COMPLAINT[2]

At the time of the events at issue in this case, Plaintiff was incarcerated at Corcoran State Prison (CSP) in Corcoran, California.

Plaintiff's allegations follow:

On September 12, 2013, Plaintiff arrived at CSP. Plaintiff was diagnosed with a urinary infection which caused him severe pain, he was prescribed Tylenol with Codeine and antibiotics. On September 23, 2013, while defendant C/O Johnson was escorting Plaintiff to get his pain medications, Plaintiff doubled up in pain. Defendant Johnson asked, "Hey old timer are you alright," and Plaintiff told him about the infection that was causing him severe pain. (ECF No. 12 at 12:13-14.)[3]

On September 24, 2013, at 7:00 a.m., defendants C/O Johnson and C/O Fritz (female) came to conduct a random search of Plaintiff's cell. C/O Johnson instructed C/O Gonzales (control booth officer – not a defendant) to open Plaintiff's cell. Plaintiff's cell mate was sitting on the top bunk. Defendant Johnson opened the cell door and instructed Plaintiff to remove all of his clothing, turn around, bend forward at the waist, and pull his buttocks apart and hold them

---

[2] Plaintiff's First Amended Complaint is verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence. Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004). The summarization of Plaintiff's claims in this section should not be viewed by the parties as a ruling that the allegations are admissible. The Court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

[3] All page numbers cited herein are those assigned by the court's CM/ECF system and not based on the parties' pagination of their briefing materials.

open so that defendant Johnson could examine Plaintiff's rectal area. Other inmates were being released for breakfast and witnessed this strip search in the presence of the female C/O. Per CDCR policy, Plaintiff squatted and coughed. Johnson stated that if Plaintiff didn't allow him to "look up my butt," he would have Plaintiff placed on potty watch. (ECF No. 12 at 5.) Plaintiff requested potty watch. Defendant Johnson gave Plaintiff his boxer shorts and as soon as Plaintiff put them on defendant Johnson grabbed Plaintiff by the arm and the back of his head and slammed his face into the wall busting Plaintiff's mouth, and then handcuffed him. C/O Gonzales also witnessed the incident by C/O Johnson. When C/O Johnson slammed Plaintiff's face into the wall, C/O Gonzales stuck his gun out of the control booth and pointed it at Plaintiff. Defendant Johnson told C/O Fritz to watch Plaintiff's cell mate and to spray him if he moved. C/O Johnson locked Plaintiff in the shower and went back to search Plaintiff's cell. C/O Johnson returned to the shower and asked if Plaintiff was going to follow his instructions. Plaintiff just looked at him. C/O Johnson instructed C/O Gonzales to open the shower door and told Plaintiff to exit. As Plaintiff came out, C/O Johnson grabbed him by the hand, still handcuffed, bent his wrist very aggressively, escorted Plaintiff to the program office and placed him into a holding cage.

A short time later, defendants Sgt. Gonzales, C/O Johnson, C/O Castro, C/O Miner, C/O Florez, C/O Potzernitz, and C/O Scaife came into the holding area. C/O Scaife stood by the door and observed. Sgt. Gonzales stated that C/O Johnson believed Plaintiff had contraband secreted in his rectal cavity. Plaintiff informed Sgt. Gonzales about his urinary infection that was causing him severe pain and told Sgt. Gonzales that he could verify this information at the clinic. Sgt. Gonzales said that wasn't necessary, he just needed to check Plaintiff for contraband. Sgt. Gonzales instructed Plaintiff to remove his boxers, raise his hands up, open his mouth, and run his fingers through his hair, which Plaintiff did. Sgt. Gonzales then unlocked the holding cage and instructed him to exit, which Plaintiff did. Sgt. Gonzales told Plaintiff to turn his back to him, bend forward at the waist and grab his buttocks and spread them open so he could "see up my butt." (ECF No. 12 at 6:15.) Plaintiff told Sgt. Gonzales that CDCR policy was to squat and cough. Plaintiff squatted and coughed five times. Sgt. Gonzales told Plaintiff he needed to

follow his instructions or he would place Plaintiff on potty watch. Plaintiff said he would rather be on potty watch than hold his butt open for a bunch of homosexual correctional officers. Sgt. Gonzales then stated, "I'm not going to waste everybody's time placing you on potty watch," then grabbed Plaintiff and instructed the other C/Os to take Plaintiff down. (ECF No. 12 at 6:19-20.) Defendants Johnson, Castro, Miner, Florez, and Potzernitz all attacked Plaintiff, forcing him to the ground naked. Plaintiff was kicked and stomped in the head, shoulders, back, and legs. C/O Castro and C/O Potzernitz stood on Plaintiff's upper back pinning him to the ground. C/O Miner and C/O Florez grabbed Plaintiff's ankles and forced his legs apart. Defendant C/O Scaife stood by and watched the assault. Then C/O Johnson got on the ground, grabbed Plaintiff's buttocks, and spread them apart. Sgt. Gonzales stood between Plaintiff's legs and instructed C/O Miner and C/O Florez to lift his legs up. Sgt. Gonzales then checked Plaintiff's rectal area, Plaintiff was cleared and the officers let him go. Sgt. Gonzales instructed Plaintiff to go back into the holding cage and returned his boxer shorts to him. All of the officers stepped out into the hallway. Plaintiff was humiliated and embarrassed.

A short time later, Plaintiff overheard C/O Johnson and Sgt. Gonzales conspiring in the hallway. C/O Johnson said, "Inmate Smith has a history of filing staff misconduct complaints." (ECF No. 12 at 7:4-5.) Sgt. Gonzales responded, "Let him go back to his cell and if he says anything we'll say he got into a fight with his cell mate." (ECF No. 12 at 7:6-7.)

Sgt. Gonzales returned to the holding cage and instructed Plaintiff to return to his cell. Plaintiff informed Sgt. Gonzales that he needed medical attention and was in great pain from being kicked and stomped. Sgt. Gonzales told Plaintiff to return to his cell and he would notify medical staff. At this point, Sgt. Gonzales picked up a towel and started to wipe the boot prints off of Plaintiff's back. Plaintiff told him not to touch him and started walking out of the program office. Plaintiff turned left towards medical instead of right toward 3A05 (his cell). Sgt. Gonzales came running out of the program office, stopped Plaintiff and told him to return to his cell. Plaintiff sat on the ground and told Sgt. Gonzales he was in pain and needed medical attention. Sgt. Gonzales instructed C/O Castro and C/O Potzernitz to pick Plaintiff up and return him to his cell. Castro and Potzernitz each grabbed Plaintiff under his arm and started to half

carry and half drag him across the yard. Plaintiff started yelling, the yard tower activated an alarm and Sgt. Gonzales instructed the officers to put him down. Nurse Levan (not a defendant) arrived and asked what the matter was. Plaintiff told the nurse that Sgt. Gonzales and six C/Os had assaulted him. Sgt. Gonzales told the nurse that they didn't assault Plaintiff, and Plaintiff's back was dirty because he had lain on the ground. The nurse asked Sgt. Gonzales how Plaintiff's mouth got busted and his shoulder got bruised. Sgt. Gonzales told the nurse to medically clear Plaintiff so they could put him back in his cell. The nurse told Sgt. Gonzales to use a wheelchair to return him to his cell and she would have Plaintiff seen by the doctor later.

Nurse Levan filled out a CDCR-7219 medical report of Plaintiff's injuries, noting redness and dried blood on his mouth and abrasions on his shoulders, back, and legs.

C/O Johnson confiscated Plaintiff's 602 form from his pocket at the clinic window at noon when Plaintiff informed Nurse Levan that he was suicidal. Sgt. Gonzales then read the 602 out loud to other C/Os at the program office while Plaintiff was waiting to see his clinician Dr. Stokes (not a defendant).

Sgt. Gonzales issued Plaintiff RVR #3-A-13-09-034 for willfully delaying a peace officer as a way to justify his actions, using creative writing to say he ordered C/Os Castro and Potzernitz to pick Plaintiff up and return him to his cell because when Plaintiff sat down and requested medical attention, he was blocking the doorway to the program office which was a hazard. Sgt. Gonzales also said that the 7219 medical report by Nurse Levan only listed a busted lip. Initially, the RVR was written by C/O Johnson. But Sgt. Gonzales altered it from saying Plaintiff squatted and coughed to say that Plaintiff had not followed his instructions to bend forward at the waist and spread his buttocks. He said that after five minutes of speaking to Plaintiff, Plaintiff complied and the search was concluded with negative results. But the five-minute conversation actually consisted of Sgt. Gonzales ordering his staff to use force on Plaintiff, pinning him down, kicking and stomping him, and forcibly spreading his buttocks apart. There were also other errors written on the RVR, which is why Plaintiff requested as witnesses C/O Gonzales, C/O Fritz, and Plaintiff's cell mate. (ECF No. 12 at 9 ¶3.)

///

At the RVR hearing, Nurse Levan told Hearing Officer Lt. Marmolejo (not a defendant) that Sgt. Gonzales told her (nurse) to turn the report over to Sgt. Gonzales, who claimed he misplaced it and never found it. However, Lt. Marmolejo did not record this statement at the RVR hearing. Plaintiff had two other medical reports done by Dr. Barnett (not a defendant) on September 25, 2013, and Nurse Grisweld (not a defendant) on September 24, 2013, to document Plaintiff's injuries showing the injuries Plaintiff received from the assault on September 24, 2013. At the hearing, Plaintiff was not allowed to question Nurse Levan. Hearing Officer Lt. Marmolejo asked Sgt. Gonzales if Plaintiff informed him of his medical condition and that he needed to see the nurse. Sgt. Gonzales answered that he didn't remember, but he contradicted himself by saying Plaintiff sat on his butt claiming he needed medical. Lt. Marmolejo did not allow Plaintiff's requested witnesses. Also, Plaintiff should have been assigned an Investigative Employee but was not. Plaintiff was found guilty of a rules violation and forfeited 90 days of credits and lost 90 days of privileges. Also, as a result of the disciplinary proceeding, Plaintiff's privilege group was changed from A-1 to B-2 status.

At noon, Sgt. Gonzales instructed C/O Johnson to roll up Plaintiff's property and bring it up to the program office because if Plaintiff was going to file a 602 grievance for staff misconduct and use of force, then Sgt. Gonzales would have Plaintiff placed in Administrative Segregation (Ad-Seg) for three to six months without his property. Plaintiff was then placed in a mental health crisis bed on suicide watch for a few days. When he returned to 3A yard all of his property was missing. On October 16, 2013, some of Plaintiff's property was returned by C/O Florez.

On October 16, 2013, Plaintiff filed a 602 grievance, #CSP-C-2-13-07568, concerning the use of excessive force and not reporting it, which was partially granted on December 31, 2013. Plaintiff submitted it to the third level on January 15, 2014, where it was rejected on February 25, 2014. Plaintiff re-submitted it on April 10, 2014, and it was rejected again on July 28, 2014. Plaintiff submitted it again on August 4, 2014, and it was rejected a third time on October 15, 2014. Plaintiff wrote a letter to Attorney General Kamala Harris on January 11, 2015, and a letter to the Inspector General on February 22, 2015.

On November 11, 2013, Plaintiff was placed on suicide watch again. During this time, Plaintiff's property was rolled up and never issued back to him. When Plaintiff returned back to 3A yard on November 12, 2013, he refused to be housed with a gang member. Custody attempted to move Plaintiff into a cell which was already occupied by an inmate in the lower bunk who was a gang member. Custody had written on Plaintiff's bed card that he was a Crip gang member, which is not true. The inmate had already made plans to move a friend in with him, so Plaintiff refused to move in because Plaintiff is not a gang member, and because Plaintiff also had a lower bunk chrono. This upset Sgt. Gonzales because Plaintiff had three cell moves in one month.

Plaintiff informed floor staff that he was suicidal and wanted to return to the mental health crisis bed, so he was taken to the program office and placed into a holding cage. Sgt. Gonzales stated that he was tired of Plaintiff "going suicidal," so he was going to move Plaintiff off 3A yard. (ECF No. 12 at 15:12.) Sgt. Gonzales told Plaintiff's clinician, Dr. Stokes, that he was placing Plaintiff in Ad-Seg for safety concerns because Plaintiff had told him (Gonzales) that Plaintiff was being beaten up by the black inmates for no reason. Sgt. Gonzales issued Plaintiff a fictitious lock-up order for safety concerns and had him placed in Ad-Seg. Plaintiff alleges that he never told Sgt. Gonzales he was being beaten up and that Sgt. Gonzales made up a fictitious story to suit his purpose for the lock up order and RVR.

Plaintiff's clinician Dr. Stokes told Plaintiff that Sgt. Gonzales said he was having Plaintiff placed in Ad-Seg for safety concerns, but she (Stokes) was sending him to the mental health crisis bed. When Plaintiff returned on November 15, 2013, he was placed in Ad-Seg.

On November 13, 2013, Sgt. Gonzales issued a chrono for safety concerns which said that housing unit staff informed Plaintiff that he would be housed with a compatible cell mate. Sgt. Gonzales doesn't identify the cell mate or the housing unit staff who said that Plaintiff stated, "I'm not going to get beat up again. The last cell mate I was with beat me up so I said I'd kill him if I stayed in the cell with him." (ECF No. 12 at 15:24-25.) Plaintiff alleges that none of this is true. Plaintiff did not tell Sgt. Gonzales that he had been assaulted multiple times on Facility 3A by a black inmate. Plaintiff alleges that he would have filed a 602 appeal if he had been assaulted. Sgt. Gonzales never interviewed Plaintiff about safety concerns. The document

stating Plaintiff was claiming safety concerns endangered Plaintiff's life on the general population. Plaintiff never said that inmates Johnson or Law were on his enemy list. Plaintiff contends that Sgt. Gonzales issued the safety concerns order to get back at Plaintiff for filing the 602 use of force appeal. Sgt. Gonzales labeled him as a "snitch" and pressured Plaintiff into being placed on a sensitive needs yard, both which placed Plaintiff in danger when released back to the yard or transferred to another prison. (ECF No. 12 at 17:19.)

Under CDCR 3315, other employees cannot issue write-ups on other staff's behavior. The staff who witnessed the infraction must write the RVR. Plaintiff contends that therefore, 3A02 housing staff, and not Sgt. Gonzales, should have issued him an RVR for refusing a cell mate.

Plaintiff submitted a 602 appeal concerning his missing property and it was assigned to Sgt. Gonzales at the first level of review. On January 15, 2014, Sgt. Gonzales denied the appeal, stating that Plaintiff never had any property while he was at CSP. This was not true. Plaintiff had four boxes of property when he arrived at CSP. The 602 was denied at the second and third levels of review.

On November 23, 2013, Plaintiff was scheduled for transfer to Lancaster State Prison due to Sgt. Gonzales' safety concerns. On January 5, 2014, Plaintiff filed a 602 appeal concerning his transfer and another appeal concerning Sgt. Gonzales falsifying state documents. On March 3, 2014, Plaintiff was transferred to Pelican Bay Supermax State Prison for no reason, where all of his chronos were cancelled.

Plaintiff alleges he was retaliated against by Sgt. Gonzales for exercising his right to file a grievance against Sgt. Gonzales and his staff for using excessive force against Plaintiff during a random cell search, and the retaliatory actions did not advance any legitimate penological goals. Plaintiff alleges that all of the following actions were retaliatory: issuing the RVR and lock up order and placing Plaintiff in Ad-Seg on November 12, 2013; recommending that Plaintiff be transferred; and, confiscating Plaintiff's personal property on November 12, 2013.

///

///

8

### III.  SUMMARY JUDGMENT BASED ON FAILURE TO EXHAUST

#### A.  <u>Legal Standards</u>

##### 1.  <u>Statutory Exhaustion Requirement</u>

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit.  <u>Jones v. Bock</u>, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); <u>McKinney v. Carey</u>, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, <u>Booth v. Churner</u>, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, <u>Porter v. Nussle</u>, 534 U.S. 516, 532, 122 S.Ct. 983, 993 (2002).

"[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' []—rules that are defined not by the PLRA, but by the prison grievance process itself."  <u>Jones</u>, 549 U.S. at 218 (quoting <u>Woodford v. Ngo</u>, 548 U.S. 81, 88, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006)).  <u>See also</u> <u>Marella v. Terhune</u>, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'").  An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement.  <u>Woodford</u>, 548 U.S. at 90.  However, the Ninth Circuit has made clear:  A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved.  <u>Griffin v. Arpaio</u>, 557 F.3d 1117, 1120 (9th Cir. 2009).  A grievance also need not contain every fact necessary to prove each element of an eventual legal claim.  <u>Id.</u>

Moreover, the Ninth Circuit has recognized that a grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress. To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations.  <u>Sapp v. Kimbrell</u>, 623 F.3d 813, 824 (9th Cir. 2010) (citing <u>Jones</u>, 549 U.S. at 218).

The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. Id; Griffin, 557 F.3d at 1120; see also Jones, 549 U.S. at 219 (citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance process is not a summons and complaint that initiates adversarial litigation."). Thus, in this case "[t]he California prison system's requirements define the boundaries of proper exhaustion." Marella, 568 F.3d at 1027).

A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him. See Albino v. Baca ("Albino II"), 747 F.3d 1162, 1172-73 (9th Cir. 2014). When an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as "effectively unavailable." Sapp, 623 F.3d at 823; see also Nunez v. Duncan, 591 F.3d 1217, 1224–26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Ward v. Chavez, 678 F.3d 1042, 1044-45 (9th Cir. 2012) (exhaustion excused where futile); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available); Marella, 568 F.3d 1024 (excusing an inmate's failure to exhaust because he did not have access to the necessary grievance forms to timely file his grievance). In such a case, "the inmate cannot pursue the necessary sequence of appeals." Sapp, 623 F.3d at 823.

A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002); see also Cal. Code Regs. tit. 15, § 3084.1(b) (explaining that a cancellation or rejection of an inmate's appeal "does not exhaust administrative remedies"). However, a prisoner need not "press on to exhaust further levels of review once he has received all 'available' remedies at an intermediate level of review or has been reliably informed by an administrator that no remedies are available." Brown, 422 F.3d at 936 (citing Booth, 532 U.S. at 736–739; see also Finley v. Skolnik, 616 Fed. Appx. 263, 264 (9th Cir. 2012) (Reversing dismissal for failure to exhaust).

In submitting an inmate grievance, California regulations require a prisoner to "list all staff members involved" and to "describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(3). However, the Ninth Circuit has held that "a prisoner exhausts such administrative remedies as are available . . . under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." Reyes v. Smith, 810 F.3d 654, 658 (9th Cir. 2016); see also Franklin v. Foulk, 2017 WL 784894, at *4-5 (E.D. Cal. Mar. 1, 2017); Franklin v. Lewis, 2016 WL 4761081, at *6 (N.D. Cal. Sept. 13, 2016). Thus, a prisoner's failure to list all staff members involved in an incident in his inmate grievance, or to fully describe the involvement of staff members in the incident, will not necessarily preclude his exhaustion of administrative remedies. Reyes, 810 F.3d at 958; Foulk, 2017 WL 784894, at *4 ("[T]he court in Reyes found that even though the plaintiff's grievance failed to name two physicians on the prison's three-person pain committee, prison officials were put on notice of the nature of the wrong alleged in the suit—that the plaintiff was wrongfully denied pain medication."); Lewis, 2016 WL 4761081, at *6 ("[T]o the extent Defendants argue that Plaintiff failed to comply with a procedural requirement by not naming Defendants in [his appeal], this deficiency is not necessarily fatal to Plaintiff's claim pursuant to Reyes"); Grigsby v. Munguia, No. 2:14-cv-0789 GAB AC P, 2016 WL 900197, at *11-12 (E.D. Cal. Mar. 9, 2016); see also Bulkin v. Ochoa, 2016 WL 1267265, at *1-2 (E.D. Cal. Mar. 31, 2016); see also McClure v. Chen, 246 F.Supp.3d 1286, 1292-94 (E.D. Cal. Mar. 28, 2017).

Nonetheless, for administrative remedies to be exhausted by California prisoners as to defendants who were not identified in the inmate grievance, there must be a "sufficient connection" between the claim in the appeal and the unidentified defendants such that prison officials can be said to have had "notice of the alleged deprivation" and an "opportunity to resolve it." Reyes, 810 F.3d at 959 (finding that plaintiff had satisfied PLRA exhaustion requirements as to two prison doctors despite not having identified them in his inmate appeals because there was a sufficient connection between plaintiff's appeal based on inadequate pain management, and the doctors, who served on the prison committee that had denied plaintiff medication); McClure, 246

F.Supp 3d at 1293-94 (remedies exhausted even though doctors not named in appeal; prison was placed on notice).

### 2. California Department of Corrections and Rehabilitation (CDCR) Administrative Grievance System

The court takes judicial notice of the fact that the State of California provides its prisoners and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The process is initiated by submitting a CDCR form 602. Id. at § 3084.2(a).

California prisoners are required to submit appeals within thirty calendar days of the event being appealed, and the process is initiated by submission of the appeal at the first level. Id. at §§ 3084.7(a), 3084.8(c). Three levels of appeal are involved, including the first level, second level, and third level. Id. at § 3084.7. The third level of review exhausts administrative remedies. Id. at § 3084.7(d)(3). A final decision at the third level[4] of review satisfies the exhaustion requirement under 42 U.S.C. § 1997e(a). Lira v. Herrera, 427 F.3d 1164, 1166 (9th Cir. 2005). In order to satisfy § 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. Woodford, 548 U.S. at 85 (2006); McKinney, 311 F.3d. at 1199-1201.

### 3. Motion for Summary Judgment for Failure to Exhaust

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). On April 3, 2014, the Ninth Circuit issued a decision overruling Wyatt with respect to the proper procedural device for raising the affirmative defense of exhaustion under § 1997e(a). Albino II, 747 F.3d at 1168–69. Following the decision in Albino II, defendants may raise exhaustion deficiencies as an

---

[4] The third level of review is sometimes known as the Director's level.

affirmative defense under § 1997e(a) in either (1) a motion to dismiss pursuant to Rule 12(b)(6)[5] or (2) a motion for summary judgment under Rule 56. Id. If the court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by § 1997e(e). Jones, 549 U.S. at 223–24; Lira, 427 F.3d at 1175–76.

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino II, 747 F.3d at 1169 ("If there is a genuine dispute about material facts, summary judgment will not be granted.") A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In judging the evidence at the summary judgment stage, the court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). The court must liberally construe Plaintiff's filings because he is a *pro se* prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).

In a summary judgment motion for failure to exhaust administrative remedies, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino II, 747 F.3d at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. The ultimate burden of proof remains with defendants, however. Id. "If material facts are disputed, summary judgment

///

_____

[5] Motions to dismiss under Rule 12(b)(6) are only appropriate "[i]n the rare event a failure to exhaust is clear on the face of the complaint." Albino II, 747 F.3d at 1162.

should be denied, and the district judge rather than a jury should determine the facts." <u>Id.</u> at 1166.

In arriving at these findings and recommendations, this court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court has thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**B.** **<u>Undisputed Facts</u>**

Unless otherwise noted, the following facts submitted by Defendants are undisputed by the parties or as determined by the court based on a thorough review of the record.

1.  Plaintiff Smith filed his original complaint in this action on March 27, 2017. (ECF No. 1.)

2.  Smith alleges that on September 24, 2013, the Defendants were involved in searching his cell and then searching him in a holding cell, where he was instructed to submit to an unclothed body cavity search. He alleges Defendants Gonzales, Johnson, Castro, Miner, Flores and Potzernitz used excessive force against him during these events, and that Defendants Fritz and Scaife failed to intercede and protect him. (First Am. Compl., ECF No. 12 at 5-8, 20-21.)

3.  Smith alleges Defendant Gonzales retaliated against him for filing grievances against prison staff, by issuing him a Rules Violation Report, placing him in administrative segregation, confiscating his personal property, and recommending he be transferred to another institution. (First Am. Compl., ECF No. 12 at 14-19.)

4.  The California Department of Corrections and Rehabilitation (CDCR) uses a program called the Inmate Appeals Tracking System (IATS) to electronically log and track non-medical appeals through all levels of review. (Goree Decl. at ¶ 4, 5; Voong Decl. at ¶ 4.)

///

///

5.     At all relevant times, CDCR and California State Prison, Corcoran (CSP-Corcoran) had an administrative process available for inmates to submit medical and non-medical appeals. (Goree Decl. at ¶¶ 2-5; Voong Decl. at ¶¶ 2-4.)[6]

6.     The CSP-Corcoran Appeals Office receives, reviews, and tracks all non-medical inmate appeals submitted for first and second-level review concerning events at CSP-Corcoran. First and second-level appeals accepted there are assigned a log number in the institution's IATS system (IATS I & II). (Goree Decl. at ¶¶ 2, 4, 5.)[7]

7.     CDCR's Office of Appeals (OOA) receives, reviews, and maintains inmates' non-medical appeals accepted at the third and final level of administrative review. When OOA receives an appeal, it is assigned a third-level tracking number and entered into OOA's computer tracking system (IATS III). (Voong Decl. at ¶¶ 3, 4.)

8.     Smith submitted appeal log no. CSPC-2-13-07568. In this appeal, Smith identified Sgt. Gonzales, Correctional Officers Johnson, Fritz, Florez, Miner, Castro, Potzernitz and an unidentified correctional officer as being involved in events occurring on September 24, 2013, in which he was tackled and forced to the ground. In an amended second level response dated November 5, 2014, the appeal was partially granted, to the extent that an appeal inquiry investigation was conducted, which determined that staff did not violate CDCR policy with respect to the issues appealed. Dissatisfied with this response, Smith submitted the appeal to the third level of review. At the third level the appeal was cancelled, for failure to correct and return a rejected appeal within thirty calendar days of the rejection. The third level response informed

---

[6] **Undisputed Fact # 5**.  Plaintiff disputes this fact, asserting that some of his 602 appeals were confiscated by Defendants, read and ridiculed by other corrections officers, thrown away, or responded to late.  However, the fact that the CDCR and CSP-Corcoran has an official administrative process available for inmates is undisputed.  Therefore, this fact is undisputed.

[7] **Undisputed Fact # 6.**  Plaintiff disputes this fact, asserting that the staff at CSP-Corcoran routinely confiscate 602 appeals from mail boxes and throw them away.  Plaintiff claims that the CSP-Corcoran appeals office never receives 602's when inmates mail them, and even when inmates place 602's in locked 602 boxes they never reach the CSP-Corcoran appeals office.  However, it remains undisputed that the CSP-Corcoran Appeals Office has an official administrative appeals process as described available for all inmates.  Therefore, this fact is undisputed.

Smith that a cancelled appeal may not be resubmitted, but that a separate appeal could be filed on the cancellation decision. (Goree Decl. at ¶ 8 and Ex. B; Voong Decl. at ¶¶ 8-11 and Ex. B.)[8]

9.     On May 13, 2015, the third level of review received Smith's appeal log no. OOA-13-09962, which appealed the decision to cancel appeal log no. CSPC-2-13-07568. This appeal was denied in a third level decision dated July 23, 2015. (Voong Decl. at ¶ 14 and Ex. E.)[9]

10.     Smith submitted appeal log no. CSPC-9-13-07724, which was received by the CSP-Corcoran Appeals Office on November 15, 2015. This appeal was rejected as duplicative of appeal log no. CSPC-13-07568. No further submittals of this appeal were received by the CSP-Corcoran Appeals Office. (Goree Decl. at ¶ 9 and Ex. C.)

11.     Smith submitted appeal log no. CSPC-9-13-07997. In this appeal Smith alleged Sgt. Gonzales had falsified or tampered with a medical document, and he requested the matter be investigated and that if the document had been tampered with, that staff no longer have access to it. This appeal was denied at the third level of review in a decision dated May 15, 2014. (Goree Decl. at ¶ 10 and Ex. D; Voong Decl. at ¶ 12 and Ex. C.)[10]

12.     Smith submitted appeal log no. CSPC-2-13-08015. This appeal was cancelled at the first level of review, because it was duplicative of appeal log no. CSPC-2-13-07568. No further submittals of this appeal were received by the CSP-Corcoran Appeals Office, and Smith did not appeal the cancellation decision.  (Goree Decl. at ¶ 11 and Ex. E.)[11]

---

[8] **Undisputed Fact # 8.**  Plaintiff disputes this fact, alleging that the time limits under § 3084.8(c)(3) for responding to 602 appeals were not met by appeals coordinators.  However, Plaintiff has not disputed any of the specific facts set forth in Undisputed Fact # 8.  Therefore, this fact is undisputed.

[9] **Undisputed Fact # 9.**  Plaintiff disputes this fact, arguing that his 602 appeal log no.  OOA-13-09962 should have been granted under CCR # 3084.6(a) because he was on suicide watch from October 21, 2014 to December 16, 2014 and was unable to submit his appeal.  However, while Plaintiff disagrees with the response he received, he has not disputed any of the facts set forth in Undisputed Fact # 9.  Therefore, this fact is undisputed.

[10] **Undisputed Fact # 11.**  Plaintiff disputes this fact, alleging events that took place leading up to the falsification of documents by Sergeant Gonzales.  However, Plaintiff has not disputed any of the facts set forth in Undisputed Fact # 11.  Therefore, this fact is undisputed.

[11] **Undisputed Fact # 12.**  Plaintiff disputes this fact, arguing that his appeal log no. CSP-C-2-13-08015 was not a duplicate of appeal log no. CSP-C-2-13-07568.  However, while Plaintiff disagrees with the

13.     Smith submitted appeal log no. CSPC-2-13-08131. This appeal concerned Smith's request that his personal property be located and issued to him. This appeal was denied at the third level of review in a decision dated May 15, 2014. (Goree Decl. at ¶ 12 and Ex. F; Voong Decl. at ¶ 13 and Ex. D.)[12]

14.     Smith submitted appeal log no. CSPC-2-13-08311. This appeal was rejected because it was missing necessary supporting documents, and Smith was instructed to attach a copy of cancelled appeal log no. CSPC-13-08015 and resubmit the appeal within thirty days for further consideration. No further submittals of this appeal were received by the CSP-Corcoran Appeals Office. (Goree Decl. at ¶ 13 and Ex. G.)

15.     Smith submitted appeal log no. CSPC-2-13-08357. This appeal was screened out and returned to Smith in a response at the second level of review, with instructions that he correct the appeal to line out an issue regarding staff misconduct that was being answered in a separate appeal and resubmit the appeal within thirty days. No further submittals of this appeal were received by the CSP-Corcoran Appeals Office. (Goree Decl. at ¶ 14 and Ex. H.)

16.     Smith submitted appeal log no. CSPC-2-13-08511. In this appeal Smith requested to be provided with a television and radio while housed in Administrative Segregation. This appeal was granted in a first level response dated February 1, 2014. However, inmate Smith was not satisfied with the response and submitted the appeal to the second level of review. The appeal was denied in a second level response dated March 1, 2014. No further submittals of this appeal were received by the CSP-Corcoran Appeals Office. (Goree Decl. at ¶ 15 and Ex. I.)

///

---

cancellation of his appeal as duplicative, Plaintiff has not disputed that the appeal was cancelled as duplicative. Therefore, this fact is undisputed.

[12] **Undisputed Fact # 13.** Plaintiff disputes this fact, asserting that appeal log no. CSPC-2-13-08131 concerned more than a complaint about his property. In the appeal, he also alleged that he had been retaliated against for reporting an employee's sexual misconduct and invasion of privacy. Plaintiff contends that defendant Sgt. Gonzales should not been assigned as a reviewer of this appeal because of his involvement in the September 24, 2013 strip search of Plaintiff. However, while Plaintiff raises issues about the appeal, he has not disputed any of the specific facts in Undisputed Fact #13. Therefore, this fact is undisputed.

17.    Smith submitted appeal log no. CSPC-2-14-00471. In this appeal Smith contested the endorsement of his transfer to Pelican Bay State Prison, requesting that he be returned to the 3A Yard at CSP-Corcoran, and requested a rehearing with due process rights. This appeal was rejected in a first level response dated January 21, 2014, because it raised multiple issues, and Smith was instructed to present the issues in separate appeals and resubmit the appeal. This appeal was partially granted in a first level response dated February 12, 2014, in that Smith was granted a further hearing to address the due process violation. No further submittals of this appeal were received by the CSP-Corcoran Appeals Office. (Goree Decl. at ¶ 16 and Ex. J.)

18.    Smith submitted appeal log no. CSPC-2-14-00661. This appeal was cancelled in a first level screening notice to Smith dated January 28, 2014, for exceeding time constraints because the appeal was received by the CSP-Corcoran Appeals Office on January 27, 2014, and the issues in the appeal occurred in November 2013. Smith did not appeal the cancellation decision. No further submittals of this appeal were received by the CSP-Corcoran Appeals Office. (Goree Decl. at ¶ 17 and Ex. K.)

19.    Smith submitted appeal log no. CSPC-2-14-01070. In this appeal Smith contested his guilty finding for a Rules Violation Report charge of "Fighting" dated November 8, 2013. This appeal was partially granted in a second level appeal response dated February 20, 2014, and this response was modified in an order dated February 27, 2014. No further submittals of this appeal were received by the CSP-Corcoran Appeals Office. (Goree Decl. at ¶ 18 and Ex. L.)

20.    Other than the appeals described in Undisputed Facts 8-19, there were no appeals from Smith received by the CSP-Corcoran Appeals Office on or after September 24, 2013, for events occurring at CSP-Corcoran. (Goree Decl. at ¶ 19.)

21.    Other than the appeals described in Undisputed Facts 8, 9, 10 and 12, there were no appeals from Smith that were accepted for review, or decided, at the third and final level of review.  (Voong Decl. at ¶ 7 and Ex. A.)[13]

---

[13] **Undisputed Fact # 21.**  Plaintiff disputes this fact, claiming that the appeal described in Undisputed Fact # 11, appeal log no. CSP-C-9-13-07997, which alleges falsification and tampering with a medical

### C.     **Defendants' Motion**

Defendants argue that the motion for summary judgment should be granted because under the undisputed facts, Plaintiff failed to exhaust his available administrative remedies for his claims against Defendants in this case.

First, Defendants argue that 602 appeal log no. CSPC-2-13-07568 did not exhaust administrative remedies for Plaintiff's claims of excessive use of force and cruel and unusual punishment. (See ECF No. 12 at 13.) Defendants provide evidence that this appeal was cancelled at the third level of review because Plaintiff did not submit the appeal to the third level within 30 days of the date the appeal was rejected at the second level, as required by regulations. (Goree Decl. at 8 and Exh. B; Voong Decl. at ¶¶ 8-11 and Exh. E.) (See Cal.Code Regs. tit. 15, § 3084.6(a)(2)).    Under § 3084.1(b), a cancelled appeal is not administratively exhausted. Although Plaintiff appealed the decision to cancel appeal log no. CSPC-2-13-07568, his appeal of the cancellation was denied. (Voong Decl. at ¶ 14 and Exh. E.) Defendants conclude that Plaintiff therefore did not exhaust remedies by way of appeal log no. CSPC-2-13-07568.

Second, Defendants argue that none of Plaintiff's other appeals submitted at CSP-Corcoran exhausted remedies for his claims in this case. Defendants provide evidence that none of the following appeals proceeded to a decision at the third level of review:   appeal log nos. CSPC-9-13-07724, CSPC-2-13-08015, CSPC-2-13-08311, CSPC-2-13-08357, CSPC-2-13-08511, CSPC-2-14-00661, CSPC-2-14-00471, and CSPC-2-14-01070. (Goree Decl. ¶ 9 & Exh. C, ¶ 11 & Exh. E, ¶ 13 & Exh. G, ¶ 14 & Exh. H, ¶ 15 & Exh. I, ¶ 16 & Exh. J, ¶ 18 & Exh, L.)

Next, Defendants argue and provide evidence that:

(1)     Plaintiff's appeal log no. CSPC-9-13-07997 was denied at the third level of review but did not concern any use of force by Defendants or retaliation by defendant Gonzales. (Goree Decl. at ¶ 10 & Exh. D; Voong Decl. at ¶ 12 & Exh. C.) This appeal alleged that defendant

---

document, was denied on May 15, 2014 at the third level of review by K.J. Allen. Plaintiff's evidence supports his claim. (ECF No. 39, Exh. D.) Defendants' evidence also supports Plaintiff's claim. (ECF No. 36-4, Voong Decl., Exh. A at 2 (COR-13-07997, Closed Date 05/15/2014, Denied.) Therefore, this fact is undisputed as re-written here: "Other than the appeals described in Undisputed Facts 8, 9, 10, 11, and 12, there were no appeals from Smith that were accepted for review, or decided, at the third and final level of review. (Voong Decl. at ¶ 7 and Ex. A.)"   To the extent that this fact is a disputed fact, it is not a material fact.

Gonzales falsified or tampered with a medical document.  (Id.)  Plaintiff requested an investigation, and if the document had been tampered with, that staff no longer have access to it. (Id.)  Defendants conclude that this is not an event comprising a cognizable claim in this action and this appeal did not exhaust remedies for any of Plaintiff's claims in this case.  (First Amended Compl., ECF No. 12 at 5-8, 14-19, 20-21.)

   (2)  Plaintiff's appeal log no. CSPC-2-13-08131 was denied at the third level of review.  In this appeal, Plaintiff requested that his personal property be located and returned to him.  (Goree Decl. at ¶ 12 & Exh. F; Voong Decl. at ¶ 13 & Exh. D.)  Plaintiff refers to actions by Defendant Gonzales as retaliatory, but Defendants argue that this is merely descriptive of how his property became missing.  Plaintiff only requests return of his property or the replacement of property, and he does not request that anything be done with regard to the actions of Gonzales or the other prison staff members whom he describes as being involved in events that resulted in the loss of his property.  (See Voong Decl., Exh. D.)  Defendants therefore conclude that this appeal did not exhaust remedies for any of Plaintiff's claims in this lawsuit.

  **D.**  **Defendants' Burden**

   The court finds that Defendants have carried their initial burden to prove that there was an available administrative remedy and that Plaintiff failed to exhaust that remedy.  Therefore, the burden shifts to Plaintiff to come forward with evidence showing that he did exhaust the available remedies for his excessive force claim against defendants Sgt. Gonzales, Johnson, Castro, Miner, Florez, and Potzernitz; failure to protect claim against defendants Fritz and Scaife; and, retaliation claim against defendant Sgt. Gonzales--or that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.

  **E.**  **Plaintiff's Opposition**

  **First Appeal, Plaintiff's Letters, and Plaintiff's Interview**

   Plaintiff alleges in his opposition that his first 602 appeal addressing the strip search incident that occurred on September 24, 2013, was taken from him by C/O Johnson and never returned to him. (ECF No. 39 at 2:14-3:10.)  According to Plaintiff, on September 24, 2013, C/O

Johnson was escorting Plaintiff to the A-yard clinic to receive pain medications, that Plaintiff informed the LVN that he was feeling suicidal. (Id.) The LVN told C/O Johnson to place Plaintiff in a holding cage and she would contact Plaintiff's clinician Dr. Stokes. (Id.) C/O Johnson placed Plaintiff in handcuffs and took Plaintiff's original 602 appeal concerning the illegal strip search. (Id.) Plaintiff asked C/O Johnson to return the appeal to him, and Johnson stated that Plaintiff could not take the appeal with him to CTC MHCB.[14] (Id.) Plaintiff did not receive the appeal back. (Id.) When Dr. Stokes arrived, Plaintiff told her (Stokes) that Sgt. Gonzales and Correctional Officers had physically assaulted him during a strip search, and that C/O Johnson confiscated Plaintiff's 602 appeal concerning the event. (Id.) Plaintiff requested Dr. Stokes to document this information, which she did. (Id. & Exh. A.)

Plaintiff also alleges that between November 14, 2013 and February 22, 2015, he wrote letters to the Law Office of Rosen, Bien and Galvan; Prison Law Office; Attorney General Kamala Harris; Internal Affairs; and, the Office of the Inspector General requesting an investigation into officers using unnecessary force during an illegal strip search, confiscating 602's and a CDCR 7219 medical report, falsifying documents, confiscating his property, staff throwing away 602's, and CDCR responding late to 602's. (ECF No. 39 at 20-36 (Exh. B.))

Also, Plaintiff alleges that in September 2013, news media conducted an investigation into the use of force by staff and staff throwing away 602's. (ECF No. 39 at 3:22-26.) On or about September 30, 2013, Plaintiff signed a release, was interviewed, gave a signed statement, and allowed the media to photograph his injuries. (Id.)

**Appeal Log No. CSP-C-13-07568**

Plaintiff argues that he exhausted his remedies for the claims in this case with appeal log. no. CSP-2-13-07568 ("7568"). On January 15, 2014, Plaintiff submitted appeal 7568 to the third level of review. On February 25, 2014, the Office of Appeals rejected it for missing necessary supporting documents. (ECF No. 39, Exh. C at 38.))

///

---

[14] Correctional Treatment Center/Mental Health Crisis Bed.

On March 3, 2014, Plaintiff was transferred to Pelican Bay State Prison (PBSP). (Id.) On April 10, 2014, Plaintiff resubmitted appeal 7568 to the Office of Appeals with the requested documents. (Id.) In August 2013, Plaintiff received another rejection notice from the Office of Appeals dated July 28, 2014, directing Plaintiff to remove the narrative dated April 10, 2014. (Id. at 43.) The notice also stated there was a delay in processing the mail due to a building catastrophe.[15] (Id.) On August 4, 2014, Plaintiff resubmitted appeal 7568 with the narrative removed. (Id.) On October 15, 2014, Plaintiff received a letter from the Office of Appeals stating that appeal 7568 had been forwarded back to the Appeals Coordinator at Corcoran for further action. (Id. at 44.)

From October 21, 2014 to December 16, 2014, Plaintiff was on suicide watch at PBSP in a health crisis bed. (ECF No 39 at 6:9-19.) During this time he was not allowed to have any mail, pen, or writing paper. (Id.) All mail was placed in a box outside Plaintiff's room until December 16, 2014, the day Plaintiff was discharged from the mental health crisis bed. (Id.) On December 16, 2014, Plaintiff was issued all of his mail since October 21, 2014, including the amended second level response by Lt. Marsh dated November 5, 2014. (Id.)

Under CCR § 3084.8(b), Plaintiff was required to submit the appeal [to the third level of review] "within 30 calendar days of" the decision being appealed or upon having first knowledge of the action. (ECF No. 39 at 6:22-7:18.) Plaintiff believed that he had 30 days from December 16, 2014, the day he first knew of the amended second level response decision, to re-submit appeal 7568. (Id.) Plaintiff re-submitted the appeal on December 22, 2014, which was postmarked December 26, 2014, and stamped received by the Office of Appeals on December 30, 2014. (Id.) Plaintiff submitted an explanation with the appeal that he had been mentally incapacitated and did not have access to his mail from October 21, 2014 to December 16, 2014. (ECF No. 39 at 52 (Exh. C.)) Plaintiff received a notice on May 8, 2015, cancelling appeal 7568 because it exceeded time restraints. (ECF No. 39 at 46 (Exh. C.)) The notice informed Plaintiff that pursuant to CCR § 3084.6(a), a cancelled appeal may not be resubmitted, but a separate

---

[15] Plaintiff argues that the Office of Appeals' delay in responding to appeal 7568 violated CDCR's time limit of 60 working days for the Office of Appeals to complete third level responses under § 3084.8(c)(3).

appeal can be filed on the cancellation decision. (Id.) Plaintiff had 30 calendar days to appeal the cancellation. (Id.) On May 13, 2015, Plaintiff appealed the cancellation decision to the third level of review, log no. OOA-13-09962. (ECF No. 39 at 71 (Exh. C.)) Plaintiff's appeal was denied on July 23, 2015. (Id.)

**F.    Discussion**

This case now proceeds with Plaintiff's First Amended Complaint, filed on June 23, 2017, against defendants Sergeant Gonzales, Correctional Officer (C/O) Johnson, C/O Castro, C/O Miner, C/O Florez, and C/O Potzernitz for use of excessive force in violation of the Eighth Amendment; against defendants C/O Fritz and C/O Scaife for failure to protect Plaintiff in violation of the Eighth Amendment; and against defendant Sergeant Gonzales for retaliation in violation of the First Amendment. (ECF No. 12.)

Defendant's evidence shows that administrative remedies were available to Plaintiff because CSP had an established policy that allowed inmates to file written grievances about the conditions of their confinement. (UF 4, 5, 6, 7.) Plaintiff does not argue that he was not informed about the grievance process or that he did not know he was required to file an appeal to exhaust his remedies.

Plaintiff alleges that after he was attacked on September 24, 2013, he sent letters to government officials, was interviewed by the media, and spoke to clinic technician Dr. Stokes about what happened to him, and asked Dr. Stokes to document this information, which she did. (ECF No. 39 at 2:5-6.) These efforts outside the prison grievance procedure do not demonstrate exhaustion of administrative remedies under the Prison Litigation Reform Act (PLRA). In order to adequately exhaust available administrative remedies under the PLRA before bringing a federal action concerning prison conditions, an inmate must use all steps the prison holds out, enabling the prison to reach the merits of the complained of issue. Griffin, 557 F.3d 1117. Complaints sent to public officials outside the prison grievance process do not demonstrate exhaustion of administrative remedies under the PLRA. See Jones, 549 U.S. at 218, 127 S.Ct. at 9227 ("prisoners must complete the administrative review process in accordance with the applicable procedural rules" defined by the prison grievance process) (internal quotation marks

and citation omitted); <u>O'Guinn v. Lovelock Correctional Center</u>, 502 F.3d 1056, 1062 (9th Cir. 2007) (rejecting argument that prisoner exhausted claim by filing a complaint with the Department of Justice, because "the Supreme Court has made clear that the PLRA requires a prisoner to exhaust the prison's internal grievance process"); <u>see also</u> <u>Wilson v. Wann</u>, 2008 WL 4166886, *2 (E.D.Cal., Sept. 8, 2008), adopted by, 2008 WL 4809849 (E.D.Cal. Nov. 3, 2008) (letters to the Office of the Inspector General, the Office of Internal Affairs, and the Warden did not demonstrate exhaustion).

Plaintiff also submitted numerous 602 prison appeals after September 24, 2013, at CSP during the time he was incarcerated there. (Goree Decl., ECF No. 36-5 ¶ 7 & Exh. A; Voong Decl., ECF 36-4 ¶ 7 & Exh. A.) The court shall only discuss in detail three of Plaintiff's appeals: (1) the 602 appeal that Plaintiff alleges was taken from him by C/O Johnson on September 25, 2013, (2) 602 appeal log no. CSPC-2-13-07568, cancelled at the third level of review on January 15, 2014, and 3) 602 appeal no. CSP-2-13-08311, denied at the third level of review on May 15, 2014. There are no other appeals at issue here.[16]

### (1)   <u>Appeal Taken From Plaintiff</u>

Plaintiff alleges that on September 24, 2013, C/O Johnson confiscated his original 602 appeal from his pocket and the appeal was never returned to him. (ECF No. 39 at 2:14-3:2.) Plaintiff asserts that staff at CSP routinely confiscates 602's from mail boxes and throws them away. (ECF No. 39 at 4:5-8.) Plaintiff alleges that the appeal taken from him pertained to the strip search and the force used against him on September 24, 2013. (ECF No. 39 at 2:14-16.) To the extent that Plaintiff argues that the loss of this appeal caused the appeals process to be

---

[16]The parties do not dispute that none of the other appeals filed by Plaintiff at CSP between the date of the incident at issue (September 24, 2013) and the date this lawsuit was filed (March 27, 2017) exhausted his administrative remedies. Under the Undisputed Facts (UF), the following appeals filed by Plaintiff did not exhaust his administrative remedies because none of them proceeded to a decision at the third level of review: appeal log nos. CSPC-9-13-07724 (UF No. 10), CSPC-2-13-08015 (UF No. 12), CSPC-2-13-08311 (UF No. 14), CSPC-2-13-08357 (UF No. 15), and CSPC-2-14-00471 (UF No. 17), CSPC-2-14-00661 (UF No. 18), and CSPC-2-14-01070 (UF No. 19); and the following appeals did not exhaust all of Plaintiff's remedies because they did not concern the use of force by Defendants, retaliation by defendant Gonzales, <u>and</u> failure to protect by defendants Scaife or Fritz: appeal log nos. CSPC-9-13-07997 (UF No. 11) and CSPC-2-13-08131 (UF No. 13). Therefore, the only appeals at issue are (1) the appeal taken away from Plaintiff, and (2) appeal log no. CSPC-2-13-07568, and (3) CSPC-2-13-08511 (UF No. 16).

unavailable to him, this argument fails because Plaintiff still had remedies available to him after the first appeal was taken from him. The time period for Plaintiff to file an appeal had not expired, and he timely filed another appeal pertaining to the events of September 24, 2013, log no. CSPC-2-13-07568 on October 16, 2013. (ECF No. 39 & Exh.C.)

       (2)    **Appeal Log No. CSPC-2-13-07568**

Plaintiff submitted Appeal Log No. CSPC-2-13-07568 on October 16, 2013. (ECF No. 39 & Exh. C.) Plaintiff explains his issues in the appeal as follows:

On 9-24-13 at 0700 C/O Johnson & C/O Fritz came to search my cell. C/O Johnson instructed me to strip out & hand him my clothes, which I did. C/O Johnson then instructed me to turn around (with my back to him) and bend at the waist & to spread my butt cheeks so he could see my butt. I turnd my back toward him & squatted & coughed. C/O Johnson said that I needed to follow his instruction, bend at the waist & spread my butt cheeks so he could see my butt. I informed C/O Johnson that I wasn't playing that "Homosexual Game" with him. C/O Johnson then gave me my shorts & said for me to put them on, which I did. Without warning C/O Johnson grabbed me & threw me into the wall which busted my lip & caused me to bite the inside of my mouth. I was placed into the shower & C/O Johnson went back to search inmate Pfifer. C/O Johnson escorted me to the Program Office by himself. Sgt. J. Gonzales, C/O Johnson, C/O Florez, C/O Miner, C/O E. Castro, C/O Potzernitz, & one more C/O entered the holding area. Sgt. Gonzales instructed me to remove my shorts. He unlocked the cage & said for me to step out. Sgt. Gonzales said for me to turn my back to him & bend at the waist so he could see my butt because C/O Johnson thought I might have contraband. I informed Sgt. Gonzales that I had a medical condition & C/O Johnson knew about it because he escorted me to get my pain meds every morning & asked why I was walking funny. Sgt. Gonzales said for me to bend at the waist & spread my butt cheeks or he was going to place me on potty watch. I squatted & coughed & was tackled by them.

Also C/O A.Scaife is the 6th C/O!  Signed, 1st 9-24-13 / 2nd 10-16-13

Evidence shows that this appeal was partially granted in an amended response at the second level of review on November 5, 2014, but Plaintiff did not receive the amended second level response until December 16, 2014.  (Id. at 6:17 & Exc. C.)  Plaintiff argues that under 15 CCR § 3084.8(b)(2), he had 30 days from December 16, 2014 to submit his appeal to the third level of review.  Section 3084.8 provides, in part:

(a)     Time limits for reviewing appeals shall commence upon the date of receipt of the appeal form by the appeals coordinator.

(b)     Except as described in subsection 3084.8(b)(4), an inmate or parolee must submit the appeal within 30 calendar days of:

(1)     The occurrence of the event or decision being appealed, or;

(2)     Upon first having knowledge of the action or decision being appealed, or;

(3)     Upon receiving an unsatisfactory departmental response to an appeal filed.

(4)     There shall be no time limits for allegations of sexual violence or staff sexual misconduct.

15 CCR § 3084.8(a), (b).

In the third level response dated July 23, 2015, the appeals examiner, M. Hodges, stated that Plaintiff had 9 days from the date of his release from the MHCB (December 16, 2014) until the end date of his thirty calendar days (December 25, 2014) to submit the appeal within time restraints, as follows:

Pursuant to CCR 3084.8, an inmate or parolee must submit the appeal within 30 calendar days of: the occurrence of the event or decision being appealed, or; upon first having knowledge of the action or decision being appealed, or; upon receiving an unsatisfactory departmental response to an appeal filed.

Review of the documents provided reflects the amended Second Level of Review (SLR) was returned to the appellant on November 25, 2014 and received

at the OOA for a TLR on December 30, 2014. The appellant provided an explanation for the receipt of his appeal at the OOA past time constrains that he was in a PBSP CTC MHCB from October 21, 2014, through December 16, 2014. This information was verified; however, it has been determined that the explanation does not warrant an exemption from the time constraints. The appellant had nine days from the date of his release from the MHCB (December 16, 2014) to the ending date of his 30 calendar days (December 25, 2014) to submit the appeal within time constraints; however, [the] envelope the appeal was mailed in was postmarked past time constraints and the appeal was not received in the OOA until December 30, 2014, in violation of CCR 3084.8.

. . .

The appellant has failed to present evidence that the Screener's decision is in violation of any laws, policies, and/or procedures governing appeals processing. The appeal was appropriately cancelled by the OOA Screener and shall not be accepted for processing. No relief is warranted at the TLR. past time constraint.

(ECF No. 39 at 71 ¶ III.)

As stated above, the Office of Appeals (OOA) Screener found a basis to cancel the appeal. The Appeals Examiner at the Third Level of Review reaffirmed the decision of the Screener at the amended Second Level of Review that the appeal was cancelled pursuant to CCR 3084.6(c)(10), in that the appellant failed to return a rejected and corrected appeal within 30 calendar days of the rejection.

The court finds that Plaintiff's argument has merit. Under § 3084.8(b)(2), he should have been allowed 30 days after December 16, 2014 to submit his appeal to the third level of review. However, the Appeals Examiner's erroneous decision to cancel the appeal as past time constraints, did not cause the appeals process to be unavailable to Plaintiff because he still had administrative remedies available to him. Plaintiff could appeal the cancellation of his appeal, which he did.

On May 7, 2015, Plaintiff appealed the cancellation of 602 COR-13-07568. (ECF No. 39 at 73.) On August 7, 2015, the appeal of the cancellation was denied without explanation. This final decision, which completed the appeals process but did not exhaust Plaintiff's remedies under the PLRA, caused the appeals process to be unavailable to Plaintiff. (ECF No. 39 at 71-72.) The decision, which upheld the erroneous cancellation of the appeal, violated CCR 15 § 3084.8(b)(2). Therefore, because this decision violated regulations the court finds that Plaintiff exhausted the administrative remedies that were available to him with log no. CSPC-2-13-07568, which satisfies the requirements of the PLRA.

This appeal addressed Plaintiff's excessive force claim against defendants Sgt. J. Gonzales, C/O B. Johnson, C/O Flores, C/O Miner, C/O E. Castro, and C/O Potzernitz, and failure to protect claim against defendant Scaife. The Court finds that this appeal exhausted Plaintiff's administrative remedies for his claims against these named defendants. However, Plaintiff did not exhaust his remedies for his retaliation claim against defendant Sgt. Gonzales, nor his failure to protect claim against defendant Fritz, with appeal no. CSPC- COR-13-07568. The appeal does not allege any retaliation by defendant Sgt. Gonzales, nor does it allege that defendant Fritz failed to protect Plaintiff from the excessive force used against him. The only mention of defendant Fritz in this appeal is that Fritz searched Plaintiff's cell, but Plaintiff has not alleged that defendant Fritz was present during the excessive force incident.

Therefore, appeal log no. CSPC-2-13-07568 exhausted Plaintiff's remedies for his excessive force claims against defendants Sgt. J. Gonzales, C/O B. Johnson, C/O Flores, C/O Miner, C/O E. Castro, and C/O Potzernitz, and his failure to protect claim against defendant Scaife.

(3) **Appeal Log No. CSPC-2-13-08131**

Appeal log no. CSPC-2-13-08131 pertained to Plaintiff's request that his personal property be located and issued to him. (UF No. 15.) Plaintiff argues that this appeal concerned more than a complaint about his property because in the appeal he also alleged that he was retaliated against for reporting an employee's sexual misconduct and invasion of privacy. Defendants acknowledge that Plaintiff refers to actions by defendant Sgt. Gonzales as retaliatory

in this appeal, but they argue that this is merely descriptive of how Plaintiff's property became missing. Defendants also argue that this appeal does not concern Plaintiff's retaliation claim because Plaintiff only requested return of his property or the replacement of property, but does not request that anything be done with regard to the actions of Sgt. Gonzales or the other prison staff members whom he describes as being involved in events that resulted in the loss of his property.

Plaintiff titles this appeal log no. CSPC-2-13-08131, filed on December 3, 2013, "Retaliation by Staff for Reporting Employee Sexual Misconduct." (ECF No. 36-4 at 63, 39 at 206.) Plaintiff explains his issues in the appeal as follows:

> Personal property cannot be located at this time (12-2-13). On 9-24-13, I submitted a 602-citizen complaint (Log #13-07568) for employee sexual misconduct (CCR #3401.5(F) "Invasion of privacy beyond that reasonably necessary to maintain safety & security," against the following staff members, Sgt. J. Gonzales, C/O B. Johnson, C/O Flores, C/O Miner, C/O E/ Castro, C/O Potzernitz for taking me down, while naked, causing bodily injuries, and C/O Johnson grabbing my butt cheeks & spreading them so Sgt. Gonzales could look at my butt hole. The above staff members also failed to report the use of force against me, which caused bodily injuries. (#1) on 9-24-13, C/O Johnson rolled up my property for Ad-Seg. placement & gave it to C/O Flores (property officer) who held onto it for 3 weeks (10-12-13) & issued it back with a lot of items missing. (#2) on 11-12-13, I informed medical staff that I was hearing voices and was sent over to ACH crisis unit. Upon my release on 11-15-13, I was placed in Ad-Seg 3A04-125 for safety concerns. Apparently, Sgt. Gonzales issued me a 114-D lock up on 11-12-13 saying I told him my life was in danger & I wanted to be placed in SNY. None of this is true; it's another ploy by Sgt. Gonzales to retaliate against me for my staff complaint. Also, 3A04 property officer Sauceda can't locate any of my property since 11-15-13.

(ECF No. 39 at 206, 208.)

This appeal was denied at the third level of review in a decision dated June 6, 2014, which exhausted Plaintiff's available administrative remedies. (Voong Decl. ¶ 13, ECF No. 36-4 at 4, 61-62 (Exh. D.))

The court finds that Plaintiff has exhausted his administrative remedies for his excessive force and retaliation claims in this case with appeal no. CSPC-2-13-08131. While this appeal concerns the loss of Plaintiff's personal property, it also alleges excessive force used against Plaintiff on September 24, 2013, by defendants Sgt. J. Gonzales, C/O B. Johnson, C/O Flores, C/O Miner, C/O E. Castro, and C/O Potzernitz; and retaliation against Plaintiff on November 12, 2013, by defendant Sgt. J. Gonzales for filing a staff complaint. As discussed above, a grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. Sapp, 623 F.3d at 824 (citing Jones, 549 U.S. at 218). Defendants' argument that this appeal does not concern Plaintiff's retaliation claim because Plaintiff only requests the return or replacement of his property is unpersuasive. This appeal suffices to place the prison on notice of the excessive force used against Plaintiff by defendant Gonzales, Johnson, Flores, Miner, Castro, and Potzernitz; and, the retaliation used against Plaintiff by Defendants Gonzales.

Plaintiff has not, however, made any reference in this appeal to defendants Scaife or Fritz, or to any incident in which officers stood by and watched the excessive force being used against Plaintiff without acting to protect Plaintiff. Thus, the appeal itself does not alert "the prison to the nature of the wrong [by C/Os Fritz and Scaife] for which redress is sought" in this case. Sapp, 623 F.3d at 824. Therefore, the court finds that Plaintiff has not exhausted his remedies in this appeal for his failure to protect claim against C/O Fritz or C/O Scaife.

Therefore, appeal log no. CSPC--2-13-08131 exhausted Plaintiff's remedies for his excessive force claims against defendants Sgt. J. Gonzales, C/O B. Johnson, C/O Flores, C/O Miner, C/O E. Castro, and C/O Potzernitz, and his retaliation claims against defendant Sgt. J.

///

Gonzales. This appeal, however, did not exhaust Plaintiff's remedies for his failure to protect

claims against defendants Scaife or Fritz.

## V. CONCLUSION AND RECOMMENDATIONS

The court finds, based on the record before it, that Plaintiff failed to exhaust his available administrative remedies for his failure to protect claim against defendant Fritz, but exhausted his remedies for the excessive force claims against defendants Sgt. J. Gonzales, C/O B. Johnson, C/O Flores, C/O Miner, C/O E/ Castro, and C/O Potzernitz; retaliation claims against defendant Sgt. Gonzales; and, failure to protect claim against defendant Scaife, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Therefore, Defendants' motion for summary judgment, filed on April 30, 2019, should be granted in part and denied in part, and defendant Fritz and the claims against him should be dismissed from this action, without prejudice.

Accordingly, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' motion for summary judgment, filed on April 30, 2019, be granted in part and denied in part;

2. Summary judgment be granted in favor of defendant Fritz, for Plaintiff's failure to exhaust administrative remedies for the failure-to-protect claim against him before filing suit;

3. Summary judgment against defendants Sgt. J. Gonzales, C/O B. Johnson, C/O Flores, C/O Miner, C/O E/ Castro, and C/O Potzernitz and the excessive force claims against them, and against defendant Scaife and the failure to protect claim against him, be denied;

4. Summary judgment against defendant Sgt. Gonzales and the retaliation claim against him, be denied;

5. Summary judgment against defendant Scaife and the failure to protect claim against him, be denied;

6. Defendant Fritz and the claims against him be dismissed from this action, without prejudice;

///

7. This case proceed with Plaintiff's excessive force claim against defendants Sgt. J.

Gonzales, C/O B. Johnson, C/O Flores, C/O Miner, C/O E/ Castro, and C/O Potzernitz; retaliation claim against defendant Sgt. Gonzales; and, failure to protect claim against defendant Scaife; and

8.     This case be referred back to the Magistrate Judge for further proceedings, including issuance of a new scheduling order reopening discovery and setting out new deadlines.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within fourteen (14) days** after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 14, 2019**           **/s/ Gary S. Austin**
                                             UNITED STATES MAGISTRATE JUDGE